**Glesby L. DABNEY, Appellant,**

v.

**Orville FREEMAN, Secretary of Agriculture of the United States of America, et al., Appellees.**

**No. 19207.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 6, 1965.

Decided Dec. 28, 1965.

Petition for Rehearing En Banc Denied Feb. 24, 1966.

Mr. King David, Washington, D. C., for appellant.

Mr. John A. Terry, Asst. U. S. Atty., with whom Mr. David C. Acheson, U. S. Atty. at the time the brief was filed, Messrs. Frank Q. Nebeker and Alan Kay, Asst. U. S. Attys., were on the brief, for appellees. Miss Carol Garfiel, Asst. U. S. Atty., also entered an appearance for appellees.

Before FAHY, MCGOWAN and TAMM, Circuit Judges.

McGOWAN, Circuit Judge:

The complaint in the District Court in this case sought a judgment compelling the Secretary of Agriculture to restore appellant to a clerk-typist position formerly held by her in the Farmers Home Administration. By an order reciting the consent of the parties and bearing the signatures of counsel to that end, the District Court remanded the case to the Civil Service Commission "with direc-

tions to conduct further administrative proceedings, including an oral hearing, relating to the manner of [appellant's] separation from Government service." Such a hearing was held and resulted in a determination that appellant's separation from her federal employment "was the result of her voluntary resignation of December 5, 1961 and not an adverse action subject to review, on appeal, by the Civil Service Commission." The District Court, with the Civil Service Commission record now before it and after hearing the parties in both brief and oral argument, granted appellees'[1] motion for summary judgment. We affirm this action.

I

It was appellant's essential contention throughout that her resignation of December 5, 1961 (which she did not deny was knowingly signed and delivered) was null and void because coerced. Her story was that it was obtained from her by a Department of Agriculture investigator sent from Washington to inquire into rumors of misconduct in the New Jersey office in which she worked; and that the conditions under which, and the methods by which, she was induced by this investigator to submit her resignation rendered it wholly involuntary and, accordingly, without legal effect. Within a few weeks after her resignation took effect by its terms on December 9, 1961, appellant, through counsel, represented to the Regional Director of the Civil Service Commission in New York that her resignation had been coerced and requested a hearing. A reply was received from this officer to the effect that, since resignations are not adverse actions taken by the employing authorities, they may not be made the subject of an appeal to the Commission. Appellant then went for relief to the District Court but, as has been seen, both her counsel and the Government consented that the matter be sent to the Commission for hearing.

Once there, the case was docketed under the caption of "Appeal of Glesby L.

---

1. The members of the Civil Service Commission were also named as defendants.

Dabney Under Part 22, Subpart B, of the Civil Service Regulations"; and the issue to be explored and decided was described by the Appeals Examining Office of the Commission as "whether the appellant's separation was by resignation or whether, in the alternative, the separation was a discharge subject to the procedural requirements of the laws and regulations administered by the Commission." In formulating the issue in such manner, it was said that "[A] separation resulting from resignation has been held to be an adverse action the same as a discharge where it is shown that the resignation was coerced."

 This approach is, of course, directly at variance with the response made to appellant by the Regional Director in New York. We are of the view that it is the correct one. The Commission has been entrusted by Congress with the function of hearing and deciding appeals from assertedly wrongful separations from federal service. It seems to us that a separation by reason of a *coerced* resignation is, in substance, a discharge effected by adverse action of the employing agency.[2] If and when the Commission's relieving authority is invoked by non-frivolous allegations of coercion, the Commission should entertain the appeal and hear and determine the allegations. If they are sustained, the Commission presumably must find that the particular separation has not been effected in the manner required by law and must reinstate the employment, subject to the employer's continuing discretion to initiate discharge proceedings in the prescribed manner. If they are not sustained, the appeal is to be dismissed as outside the limits of the Commission's jurisdiction. In the latter event, review of the Commission's decision may be sought in the District Court, as in other discharge cases. But, as is true of such other cases, which are heard on the record made before the Commission, the standard of judicial review is that of whether there is evidence of substance in that record which supports the Commission's view of the matter.[3]

On this record we are not, of course, squarely confronted with the question of whether an initial rebuff at the Commission level, of the kind suffered by appellant here at the hands of the New York Regional Director, entitled appellant to stay in the District Court at all costs. The consent order blunts this issue. We surmise, however, that the Government's consent may have reflected a realistic recognition of the fact that the Regional Director had denied appellant an appeal to which she was entitled. There can, we think, be little doubt that Congress intended personnel grievances of this kind to be heard and determined in the first instance by the Commission and not by the District Court. The latter has enough to do without displacing the Civil Service Commission in this area, at least without a clearer mandate from Congress than it now has.

In support of her contention that she is entitled to a trial of the factual issues in the District Court, appellant's reliance is upon Paroczay v. Hodges, 111 U.S.App. D.C. 362, 297 F.2d 439 (1961). In that case, an employee claiming involuntariness in respect of his resignation was first turned away by the Commission for the same reason given by the New York Regional Director here. The District Court, from whom relief was next sought, undertook to decide the merits of the voluntariness issue on affidavits submitted in connection with the Government's motion for summary judgment. We held

2. As was said by Judge Youngdahl in Paroczay v. Hodges, 219 F.Supp. 89, 90 (D.D.C.1963), "If the resignation was voluntarily given, then plaintiff has no right to the reinstatement in government employment which he seeks * * *. If the resignation was involuntarily given, however, then plaintiff's separation from government employment constituted a discharge, and he would be entitled to certain procedural rights * * *."

3. Pelicone v. Hodges, 116 U.S.App.D.C. 32, 320 F.2d 754 (1963); Eustace v. Day, 114 U.S.App.D.C. 242, 314 F.2d 247 (1962); Saggau v. Young, 100 U.S. App.D.C. 3, 240 F.2d 865 (1956).

only that there were disputed matters of fact which made summary judgment inappropriate. No contention was made by anyone at any stage that perhaps the Commission had erred in declining to entertain the appeal in the first instance, and that the District Court's true function under the circumstances was to correct that error.[4] Compare Competello v. Jones, 105 U.S.App.D.C. 412, 267 F.2d 689 (1959), where the Commission entertained an appeal where a resignation existed, and dismissed the appeal after a hearing in which it found the resignation to be voluntary. We sustained the District Court's grant of summary judgment in a suit to review the Commission's action.

■ A proper observance of the Congressional allocation of functions and related resources may not be safely left to a coincidence of desire by the parties to have their controversy tried in one forum rather than another. Here, in our view, the consent order seems to us to have been wholly consonant with, if indeed not dictated by, a due respect for that allocation; and we think the District Court acted wisely in entering it.

## II

The Analysis and Findings of the Appeals Examining Office describe in detail the nature of the evidence which was forthcoming in the Commission hearing.[5] Appellant was the principal witness in her own behalf; and she told a story calculated to put the departmental investigator in a bad light in terms of an aggressive and ruthless application of high-pressure methods to secure the resignation. The investigator's account of what happened was diametrically different. Appellant's version of the facts was supported by the testimony of her supervisor, who was also present during the interview with the investigator. The nature of the rumored misconduct was such, however, as to impart to the supervisor's testimony an interest very similar to that of appellant's. And, on the question of coercion, the supervisor testified that he was present throughout and repeatedly counseled appellant not to resign. The ultimate finding was that "there is no preponderance of credible evidence to show that [appellant's] resignation was coerced or that her separation was, in fact, a discharge under the terms of Part 22B of the regulations." This finding was upheld upon a further appeal to the Commission, acting through its Board of Appeals and Review.

The issue of the voluntariness of appellant's resignation turned largely, if not entirely, upon which account of the facts was to be accepted. The investigator denied all of appellant's allegations of coercive acts, including appellant's claim that she was told that she must either resign immediately or be discharged, and that she was denied the opportunity requested by her to take some time in which to ponder, and to consult with

4. The eventual disposition of this controversy is to be found in Judge Youngdahl's opinion, reported under the same name at 219 F.Supp. 89 (D.D.C.1963). That opinion recites that, directly following the return of the case from this court, the District Court "remanded the case to the Civil Service Commission with directions to conduct further administrative proceedings, including an oral hearing, not inconsistent with the aforesaid opinion of the Court of Appeals * * *" Our opinion in that case was surely not needed to demonstrate that a substantial issue of voluntariness existed with respect to the resignation, particularly since it appears that the Commission did not first decline the appeal because of insubstantially but solely because there was a resignation. Thus, if the District Court had made this remand when the complaint was first filed, a significant saving would have been effected in the time, as well as the effort, consumed by this litigation, and the employee in question would have gotten sooner the reinstatement to which he was, at long last, held to be entitled.

5. Pursuant to the remand, a two-day hearing was held before a Civil Service Commission hearing examiner. Appellant was present at that hearing and represented by counsel. Both written and documentary evidence was received, and there are no errors claimed here in respect of the conduct of the Commission proceedings.

others about, her resignation. This last is important, because, in *Paroczay*, Judge Youngdahl took our opinion there to mean that this circumstance, if undisputed or found to exist from conflicting evidence, constitutes coercion as a matter of law. He thought that the Government's own testimony in that case established this fact beyond dispute; and he held for the employee accordingly. The investigator's testimony here, by contrast, was that the purpose to resign was conceived by appellant alone, unaided by either suggestion or pressure from him, and that she apparently preferred to follow this course rather than to stand by a long statement he had taken from her in the course of his investigation. The Commission's finding was that it had "no basis for questioning the accuracy of the testimony he [the investigator] has furnished."

Contrarily, the Commission thought there were some circumstances which seriously challenged appellant's credibility. With some of these we are not much impressed, such as the fact that, in an affidavit made some four years after the event, appellant said that she had once been reinstated as a Clerk-Typist GS–4 when in truth that reinstatement was as a Clerk-Typist GS–3, with promotion to the higher grade coming some months later. This inconsistency strikes us as having little appeal except to a mind bemused by long exposure to the minutiae of federal personnel administration. We are much more persuaded, as we think the Commission was also, by the fact that appellant conceded on cross-examination the existence of testimony by her in her supervisor's discharge hearing that she had resigned to protect his job; and by her further affirmative response on the record to a suggestion that she had "decided the best thing to do was to leave the job at that time."

■ In such a situation, the conclusion of the trier is to be accorded great weight. The job of hearing the evidence and drawing a conclusion was the Commission's, and review of its work in the District Court involves not an independent determination by it from the cold record but, rather, a scrutiny of that record to see whether it is so lacking in support as to make the Commission's action unacceptably arbitrary.[6] Although the District Court's order granting summary judgment does not say in so many words that this is the standard of review to which it adhered, we think it safe to assume that it was, in view of the well-known and long-established course of review of these federal personnel cases in the courts of this jurisdiction. The only alternative course it could have followed would be to have made an independent determination of the facts from the administrative record. Since this would have been more than appellant was entitled to have, she can hardly complain now that even this was unavailing to avoid the result she challenges here.

The judgment appealed from is

Affirmed.

FAHY, Circuit Judge (dissenting):

In Paroczay v. Hodges, 111 U.S.App. D.C. 362, 364 n. 4, 297 F.2d 439, 441 n. 4, we said that where a resignation has been coerced the consequent separation of a Civil Service employee constitutes a discharge. The resignation in the present case was signed in the course of an interview and interrogation by a representative of the employing agency lasting between three and four hours. Thereafter the employee through counsel wrote to the Civil Service authorities requesting that the letter be considered as an appeal from the resignation, alleging that it had been obtained through duress and coercion. She requested a formal hearing. The Deputy Regional Director on behalf of the Civil Service authorities advised counsel that resignations are not subject to appeal under the Commission's regulations; and that "[t]hese actions are initiated by employees and are not adverse actions taken by administrative officials. * * * They are regarded

as voluntary expressions of an employee's desire to leave his employing agency and are binding on the employee once they are submitted. * * * In view of this, * * * we do not find any basis for accepting an appeal from the resignation action in this case. We do not, under the circumstances, plan to take any further action in this matter." No procedure had been established by statute or regulations to review the merits of such a simulated discharge; that is, to determine the issue of voluntariness of the resignation. Accordingly, as in Rich v. Mitchell [1] and *Paroczay*, where the resignations were also attacked as coerced, the employee sought relief in the District Court. In *Rich*, on the basis of the data before the District Court, we affirmed its grant of summary judgment for the government officials. In *Paroczay*, however, where the District Court decided the issue of voluntariness on affidavits, we reversed a like summary judgment because there was a genuine issue of material fact and the defendant officials were not entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P. On our remand the District Court in turn remanded to the Commission for "further administrative proceedings, including an oral hearing" not inconsistent with the opinion of this court. The Commission then for the first time held a hearing on the issue of voluntariness. It found that the resignation was voluntary. When the record came before the District Court for review Judge Youngdahl found otherwise and ordered reinstatement of the employee. Paroczay v. Hodges, 219 F. Supp. 89.

In the present case the employee consented to an order of the District Court remanding the cause to the Commission for "further administrative proceedings, including an oral hearing, relating to the manner of [appellant's] separation from Government service," the court retaining jurisdiction for such further action as might be necessary. In the Civil Service Commission a hearing on the issue of coercion, which had been refused before,

was held. The Appeals Examining Office found the resignation was voluntary. The Board of Appeals and Review reached the same result and held that the employee's separation was not adverse action subject to appellate review by the Civil Service Commission. The matter then came on for consideration again by the District Court, on the administrative record. The court granted the motion of the employing agency and of the Commission for summary judgment, reciting that there was no genuine issue of material fact and that the defendants were entitled to judgment as a matter of law.

It will be seen that this is not a case where the Commission has determined that an agency or department of the government has validly taken adverse personnel action against an employee on notice of charges with opportunity to answer or otherwise have the benefit of procedures provided by statute or regulation. In the ordinary discharge case the issue is not whether there was a discharge. It is whether the discharge was valid. Here the issue is whether there was a discharge, the answer depending upon resolution of the issue of coercion, that is, whether a representative of the employing agency had coerced an employee to resign. The conduct of the representative of the agency, not the conduct attributed to an employee as a basis for a discharge, is the issue. The case therefore lies outside the reasoning of the decisions that on review of adverse personnel action sustained by the Commission the court will accept the Commission's decision if applicable procedures have been followed and the factual findings have substantial support in the evidence. This rule finds justification particularly in the desirability that the retention or removal of employees for the good of the service be left largely to the employing agency or department with a minimum of judicial supervision. This accords with the plan created by Congress. I would not extend this rule to the present case where the reasons which gave rise to it do not apply. They do not apply

---

1. 106 U.S.App.D.C. 343, 273 F.2d 78, cert. denied, 368 U.S. 854, 82 S.Ct. 91, 7 L.Ed.2d 52.

when the issue is whether a representative of the agency or department has coerced an employee to abandon her position. This is not the kind of personnel problem specially entrusted to the Commission. In any event I would not construe the consent to the remand to the Commission in this case as consent that when the case came back to the District Court the court would hold itself to the same standard of review as in the ordinary discharge case. That is, would limit itself to a determination whether the Commission decision was "arbitrary or capricious" or its findings were "supported by evidence," Pelicone v. Hodges, 116 U.S.App.D.C. 32, 33, 320 F.2d 754, 755, or "there is a rational basis for the conclusions reached by the administrative agency," Eustace v. Day, 114 U.S.App. D.C. 242, 314 F.2d 247, or the equally stringent standard of Saggau v. Young, 100 U.S.App.D.C. 3, 240 F.2d 865. These cases were discharge or removal cases. Moreover, the standards they follow were established by the judiciary. They are not required by the Administrative Procedure Act or any other statute, in contrast, for example, with the Labor Acts [2] and other statutes where Congress itself, for reasons of its own applicable to the special duties entrusted to the agency, has prescribed the standards by which the court will review the findings of fact.

The remand to the Commission in this case did not explicitly call for Commission findings on the issue of coercion. This is not to say, however, that those made are not to be accorded weight. Weight should be given to them; but where the issue is coercion of a resignation—cases of this kind are rare in our experience—the difference between the issue and the circumstances giving rise to the controversy, and the issue and circumstances where personnel action against an employee following upon charges is involved, leads me to a different view of the standard by which the courts should review the finding. In

the absence of a statute providing otherwise I would require the finding on coercion to be tested by a standard no more restrictive upon the court than one which accords due weight to the better opportunity of the official presiding over the hearing and making the initial finding to pass upon the credibility of the witnesses. See Rule 52(a), Fed.R.Civ.P. In any event if the appropriate division of responsibility between agency and judiciary in such a case requires a more restrictive role than this for the court, then a "clearly erroneous" standard like that of Rule 52(a) would suffice.

There is another difficulty I have with the disposition of this appeal. We do not know why the trial judge gave summary judgment for appellees. The practice has grown up, encouraged no doubt by the failure of this court to indicate dissatisfaction with it, of granting summary judgment in employee discharge cases without any indication of the basis therefor except the language of Rule 56 (c), namely, that there is no genuine issue of material fact and defendants are entitled to judgment as a matter of law. Were there only an issue of law nothing more would be needed; but in reviewing administrative factual findings on an administrative record the court is not confronted with a mere legal issue in the usual sense. On the administrative record upon which the court acted in this case there was a genuine issue of material fact as to coercion. This issue could be disposed of by summary judgment only if the court found that the Commission finding met the correct standard of review. No trial de novo being required judgment could then be entered for the defendants as a matter of law. But unless we can ascertain that the court reached its conclusion under the proper standard of review we should not affirm summary judgment. In Grant v. Benson, 97 U.S.App.D.C. 191, 195, 229 F.2d 765, 769, heard by the District Court on the administrative record, we pointed out that the

2. "The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive." 29 U.S.C. § 160(e).

court found that "the findings and conclusions of the Secretary were based on and supported by substantial evidence in the record." And see Minkoff v. Payne, 93 U.S.App.D.C. 123, 126, 210 F.2d 689, 692, though the situation there was not so clear. And see National Broadcasting Co., Inc. et al. v. United States et al., 47 F.Supp. 940, at 946–947, where Judge Learned Hand held for a three-judge District Court that "there was substantial support for the findings in the record." When the case reached the Supreme Court and a like conclusion was stated this was after the District Court determination had been made under a standard correctly set forth. National Broadcasting Co. v. United States, 319 U.S. 190, 224, 63 S.Ct. 997, 87 L.Ed. 1344. So that even were the prevailing standard in employee discharge cases to be applied here, I think the District Court should disclose the basis for holding there was no genuine issue of material fact.

Appellant resigned only after the pressure of a period of investigation, examination and questioning extending between three and four hours into the evening after the working day. I do not intimate that when an employee is offered the opportunity freely to resign rather than face charges the resignation is involuntary. I do question most earnestly whether this resignation was of that character. And it seems to me this court should not affirm a decision of the District Court, resulting in leaving this Commission finding of voluntariness in effect, unless we know upon what basis the District Court reached its decision. If it be assumed that the basis was that there was substantial evidence to support the finding I am unable to accept the decision as valid. The long period of examination, pressure and questioning which led to the resignation, in the circumstances which faced appellant, precludes agreement on my part that the resignation must be held to have been voluntary merely because there was some substantial evidence to support the finding that it was.

I respectfully dissent.